**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Diana JOHNSON, Defendant–Appellee.**

No. 99–10485.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 11, 2000.

Filed Oct. 13, 2000.

Ronald C. Rachow, Assistant United States Attorney, Reno, Nevada, for the plaintiff-appellant.

Patrick J. Reilly, Las Vegas, Nevada, and N. Patrick Flanagan, III, Hale Lane Peek Dennison Howard and Anderson, Reno, Nevada, for the defendant-appellee.

Before: THOMPSON, T.G. NELSON and SILVERMAN, Circuit Judges.

T.G. NELSON, Circuit Judge:

Diana Johnson was found guilty by a jury of receiving "stolen Government property," in violation of 18 U.S.C. § 641, by receiving money embezzled from the Agricultural Stabilization Conservation Service ("ASCS"),[1] a branch of the United States Department of Agriculture ("USDA"). The question before us today is whether the evidence before the jury was sufficient to support a finding that the money received by Johnson was *property of*[2] the United States Government. We hold that it was. We therefore vacate the district court's judgment of acquittal and reinstate the jury's guilty verdict.

---

**1.** The ASCS was renamed in 1995 and is now called the "Farm Service Agency."

**2.** Title 18 U.S.C. § 641 makes it unlawful to receive property "of the United States ... with intent to convert it to his use or gain, knowing it to have been embezzled [or] stolen."

## I.

ASCS disburses funds in the form of grants and loans to farmers and ranchers under various Government programs. Commodity Credit Corporation ("CCC"), also a Government entity, provides all funding for the ASCS administered programs.

Funds are disbursed to farmers and ranchers approved for participation in an ASCS administered program via CCC checks that are prepared, signed, and mailed out from the local ASCS offices.

Local ASCS offices are not authorized to maintain checking accounts.[3] The local offices are authorized only to disburse funds via CCC checks. Moreover, repayment of ASCS administered loans is to be made directly to CCC. If a local ASCS office receives a loan payment from a program participant, the local office is to record receipt of the payment, put the payment on a schedule of deposit, and transmit the payment to CCC for deposit.

In 1997, an investigation into a loss of funds from the ASCS office in Elko, Nevada, uncovered an embezzlement scheme involving a local bank account opened under the name "United States Department of Agriculture, Agriculture Stabilization and Conservation Service" ("USDA–ASCS account"). This account was opened by Barbara Blackstock, who was at that time the County Executive Director for the Elko ASCS office.

On October 7, 1997, FBI Agent Jack Salisbury and Agent Tim Shannon of the USDA Office of the Inspector General informed Blackstock that she was under criminal investigation for embezzlement and requested that she consent to an interview with them. Blackstock requested that she be allowed to speak with her attorney first. Blackstock met with her attorney later that same day. During this meeting, Blackstock confessed to the embezzlement and spoke of committing suicide rather than facing arrest. Sometime that night or early the next morning, Blackstock committed suicide.

The investigation into the missing money continued. This investigation revealed that money from the USDA–ASCS account had been laundered through the personal bank account of Diana Johnson, Blackstock's twin sister.

On March 6, 1998, Agents Salisbury and Shannon interviewed Johnson. During this interview, Johnson was shown five checks drawn on the USDA–ASCS account and asked if the checks bore her signatures. Johnson denied that the endorsing signatures were hers, but admitted that her account number was printed on each of the five checks. Approximately one month later, the agents returned to Johnson's home to collect handwriting exemplars. When shown the five checks again, Johnson admitted that one of the checks, check # 1127, bore her signature. Johnson also admitted that all five of the checks had been deposited into her personal bank account.

On July 22, 1998, the Government filed an eleven-count indictment against Johnson alleging one count of conspiracy in violation of 18 U.S.C. § 371, four counts of theft of Government monies in violation of 18 U.S.C. § 641, four counts of receipt of stolen Government property in violation of 18 U.S.C. § 641, one count of being an accessory after the fact in violation of 18 U.S.C. § 3, and one count of concealing/covering up any material fact in violation of 18 U.S.C. § 1001. The case went to trial in May 1999. In early June 1999, because of the jury's inability to reach a verdict, the district court granted a mistrial. The district court also granted in part

---

**3.** Prior to 1986, the local ASCS offices were authorized to open local bank accounts to pay salaries and various office expenses. However, since that time, all local bank accounts were ordered closed and only checks drawn through CCC were authorized. Moreover, at no time has there been authorization for program funds to be disbursed from, or repayments made to, local accounts; these funds have always been administered via CCC.

Johnson's motion for acquittal under Federal Rule of Criminal Procedure 29 and entered judgment of acquittal on all counts of the indictment except the four counts charging Johnson with receipt of stolen Government property in violation of 18 U.S.C. § 641.

Johnson's retrial on the remaining four counts began at the end of June 1999. In July 1999, the second jury returned a verdict of guilty as to one count of receipt of stolen Government property, but not guilty as to the other three counts. Johnson again moved for acquittal pursuant to Rule 29. The district court granted the motion, holding that because the USDA–ASCS account had on deposit over $5,000 in unidentified funds, a rational jury could not conclude beyond a reasonable doubt that the $3,000 associated with check # 1127–the "property" that Johnson was convicted of receiving-was *property of* the Government. The district court therefore entered a judgment of acquittal on the one count that Johnson was found guilty of.

■ The Government appeals, seeking to have the district court's judgment of acquittal vacated and the jury verdict reinstated.[4]

## II.

■ We review *de novo* the district court's ruling on a motion for acquittal under Rule 29.[5] "There is sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense[ ] charged beyond a reasonable doubt."[6] In conducting this review, "we are powerless to question a jury's assess-

ment of witnesses' credibility,"[7] and "must presume ... that the trier of fact resolved any ... conflict[ing inferences] in favor of the prosecution."[8]

## III.

■ At issue in this case is whether the evidence was sufficient to show that the "property" received by Johnson, i.e., the money associated with check # 1127, was *property of* the Government. We hold that it was.

The evidence demonstrated that the Elko ASCS office was not authorized to open or maintain any local bank accounts; that the USDA–ASCS account opened by Blackstock was unauthorized and illegal; that stolen Government money was being deposited into that account and disbursed by Blackstock to Johnson; that Johnson received numerous checks drawn on the illegal USDA–ASCS account, including check # 1127; that Johnson was the payee on each of the checks she received; that each of these checks bore the endorsement "Diana Johnson"; and that Johnson admitted signing check # 1127 and depositing it into her personal bank account.

Additionally, Agent Shannon testified that he conducted a thorough review of all bank records related to the illegal USDA–ASCS account and that his review uncovered evidence that over $219,000 in stolen Government money had been deposited into the illegal USDA–ASCS account and no evidence that any legitimate or non-Governmental money was deposited into the account. Agent Shannon then opined that the money received by Johnson was property of the Government.

---

4. The Government may appeal from an order granting a judgment of acquittal entered by a court after a jury has returned a verdict of guilty. *See United States v. Martin Linen Supply Co.*, 430 U.S. 564, 570, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977); *United States v. Foumai*, 910 F.2d 617, 619 (9th Cir.1990).

5. *United States v. Hinton*, 222 F.3d 664, 669 (9th Cir.2000).

6. *Id.*

7. *United States v. Croft*, 124 F.3d 1109, 1125 (9th Cir.1997).

8. *Wright v. West*, 505 U.S. 277, 296–97, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality opinion).

The defense's expert did testify that over $5,000 in the USDA–ASCS account could not be linked to any particular source and opined that this particular money, rather than the stolen Government money, was drawn out of the account to cover check # 1127. However, this expert was not able to identify the particular source of the $5,000, nor was he able to demonstrate that the $5,000 came from any legitimate source.

When faced with a record of historical facts that supports conflicting inferences, we "must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."[9] Moreover, we are mindful of the fact that "the prosecution need not affirmatively 'rule out every hypothesis except that of guilt.' "[10] In light of these underlying concepts, we hold that a rational jury could conclude from the evidence that all money deposited into the illegal USDA–ASCS account was *property of* the Government; that any money drawn from the USDA–ASCS account thus was also *property of* the Government; and, therefore, that the money drawn from the USDA–ASCS account to cover check # 1127 was *property of* the Government.[11]

## IV.

There was sufficient evidence to support a finding that the "property" received by Johnson was *property of* the Government. The district court's order granting the judgment of acquittal is therefore vacated, and the case is remanded with instructions to reinstate the jury verdict.

VACATED and REMANDED.

---

**9.** *Id.*

**10.** *Id.*

**11.** This case does not involve, and we therefore do not decide, the proper analysis of a similar case involving stolen funds commingled with legally possessed funds.