UNITED STATES of America,
Plaintiff,

v.

Michael KRANOVICH, Defendant.

No. CR–N–02–0138–ECR(VPC).

United States District Court,
D. Nevada.

Feb. 7, 2003.

United States of America, Ronald C. Rachow, United States Attorney Office–Reno, Reno, for Plaintiff or Petitioner.

Michael Kranovich, Fred H. Atcheson, Reno, for Defendant or Respondent.

### ORDER

EDWARD C. REED, Jr., District Judge.

Before the Court is defendant Michael Kranovich's Motion for Judgment of Acquittal filed December 2, 2002(# 38). The government opposed the motion (# 40). There was no reply.

### Procedural History

Kranovich, the elected Sheriff of Lander County, Nevada, was indicted on July 24, 2002 on two counts of theft. Count One alleged that he embezzled over $5,000 from the Lander County Sheriff's Department ("Lander County"), which was in receipt of benefits in excess of $10,000 in federal funds under 18 U.S.C. § 666 ("Section 666"). Count Two alleged that he stole over $5,000 of property of the federal government in violation of 18 U.S.C. § 641 ("Section 641").

Prior to the trial, Kranovich moved to dismiss Count One of the indictment on the ground that Section 666 is unconstitutional as applied. He argued that charging him with the subject crime violated the Spending Clause of the United States Constitution because the federal government lost any interest it had in the funds once Lander County obtained control of them.

Count One of the indictment alleged that the receipt of funds in excess of $10,000 came from the Bulletproof Vest Partnership Grant Program. It also alleged that the funds Kranovich embezzled came from a Federal Equitable Sharing Agreement, which Lander County had entered into with the federal government. The way the allegations were cast, we read them to assert that these funds were connected to the Bulletproof Vest Partnership Grant Program. This program provided grants of federal funds to Lander County for the acquisition of bulletproof vests for its law enforcement officers. Because of the direct connection between the funds received and the funds allegedly embezzled, we found the government did have a valid interest in insuring the integrity of those funds. Finding no constitutional infirmity, we denied the motion.

During Kranovich's jury trial, the evidence presented created a different factual scenario from that which we contemplated in our order denying the motion to dismiss. As alleged, the government presented evidence that Lander County received grant money under the Bulletproof Vest Part-

nership Grant Program in excess of $10,000 during the year commencing July 1, 2001. However, the money Kranovich was charged with embezzling came from funds obtained through drug forfeitures that Lander County received under the Federal Equitable Sharing Agreement, rather than from the Bulletproof Vest Partnership Grant Program. As it relates to this case, this agreement provided for the federal government to share assets with Lander County that were acquired through drug forfeitures. The agreement required that the funds be used for law enforcement purposes. At trial, it was adduced that these programs were not connected, but were in fact separate federal programs.

When the prosecution rested, Kranovich moved under Fed. R.Crim. Proc. 29(a) to acquit. At that time, he argued that the government had failed to prove that Lander County had received "benefits" in excess of $10,000 as required under Section 666. He also argued that the money stolen was not a "thing of value" of the United States under Section 641 and that the United States suffered no loss, also as required under Section 641. Based on the evidence before the Court and our reading of the case law, we denied the Rule 29(a) motion. The jury convicted Kranovich on both counts on October 25, 2002.

In the present motion, Kranovich seeks Judgment of Acquittal on Count One and Count Two. He raises three arguments. The first argument concerns Count One, which alleges a violation of Section 666, theft concerning programs receiving federal funds. He first argues that there is insufficient evidence that the alleged wrongful expenditure of funds had the necessary connection with either the expenditure of federal funds or the integrity of federal programs to satisfy 18 U.S.C. § 666. His second and third arguments mimic arguments that he made in his Rule 29(a) motion. The second argument, which also attacks the validity of his conviction under Count One, is that there is insufficient evidence that Lander County received a "benefit" under Section 666. Kranovich's final argument attacks his conviction under Count Two, which alleges theft of government property under Section 641. He asserts that there is insufficient evidence to prove that the funds embezzled were property of the United States under Section 641.

### Standard

Under a Rule 29 motion, the evidence must be viewed in the light most favorable to the government. There is sufficient evidence to support a conviction if any rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt. *United States v. Johnson*, 229 F.3d 891, 894 (9th Cir. 2000).

## MOTION FOR JUDGMENT OF ACQUITTAL AS TO COUNT ONE— THEFT CONCERNING PROGRAMS RECEIVING FEDERAL FUNDS

### I. Nexus Between Funds Embezzled and Funds Received Under 18 U.S.C. § 666 That Implicates a Federal Interest.

As relevant here, Section 666(a) provides that any agent of a State, local, or Indian tribal government, who embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that is valued at $5,000 or more, and is owned by, or is under the care, custody, or control of such organization, government, or agency shall be fined under this title, imprisoned not more than 10 years, or both. 18 U.S.C. § 666(a).

In addition, Section 666(b) provides a jurisdictional limit. Section 666(a) only applies if the organization, government, or agency of which the defendant is an agent receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance. *Id.* § 666(a) & (b).

Kranovich's first argument does not concern the elements listed in the statute. Evidence presented demonstrated that Kranovich was an agent of Lander County; he knowingly embezzled, obtained by fraud, or otherwise without authority, converted or misapplied funds worth at least $5,000; and the funds allegedly taken were under the care, custody, or control of Lander County. Moreover, although Kranovich challenges the fourth element in a separate argument, we have held there is sufficient evidence that Lander County received in excess of $10,000 under the Federal Bulletproof Vest Partnership Grant Program for the one year period beginning July 1, 2001.

What the dispute here concerns is whether there is a sufficient connection between the federal funds Lander County received and the funds that were embezzled. Kranovich claims that the government has failed to meet an element of Section 666 that requires proof that the charged misconduct bears a sufficient connection to the expenditure of federal funds or the integrity of federal programs. *See United States v. Edgar,* 304 F.3d 1320 (11th Cir.2002). He asserts there was no evidence presented at trial regarding the integrity of a federal program.[1]

As support, Kranovich contends that the federal government lacked oversight over the federal equitable sharing funds that he is charged with embezzling. However, lack of oversight is not relevant to whether a federal interest is implicated. We see no requirement in Section 666, nor does Kranovich point to any, that the government need exercise control over the funds it doles out. Oversight, as discussed more fully below, is relevant to whether federal benefits were received. *See United States v. Von Stephens,* 774 F.2d 1411 (9th Cir. 1985). It has no bearing on whether a federal interest is implicated when funds are embezzled from an agency receiving federal benefits.

With respect to Kranovich's claim that insufficient evidence of a connection to a federal program was presented, the government responds that it presented clear evidence that the funds that were the subject of this inquiry were federal forfeiture funds, which came from federal coffers and were awarded to Lander County for use pursuant to an equitable asset sharing agreement. Therefore, a sufficient connection was established.

We agree with the government that the fact that the funds embezzled came out of an account linked to the Federal Equitable Sharing Agreement provides the federal government with an interest in this prosecution. This, however, does not end the inquiry. However obliquely raised, Kranovich presents an interesting question that cannot be easily dismissed. Here, we have federal funds from the Bulletproof Vest Partnership Grant Program which serve as the required $10,000 jurisdictional element in Section 666. The funds embezzled, however, did not come from that program. Indeed, they came from funds obtained

---

1. We note that Kranovich again asserts the criminal charge in Count One violates the Spending Clause of the United States Constitution, claiming that the federal government is exceeding its bounds in prosecuting theft of

funds over which there was no explicit connection. As the government points out, we rejected Kranovich's Spending Clause argument in our Order denying Kranovich's Motion to Dismiss (# 20). We need not revisit it.

from the Federal Equitable Sharing Agreement, which Lander County entered into with the federal government. This program provided for distribution of assets seized from drug forfeitures in Lander County. While also a federal program, the equitable sharing agreement did not provide enough funding to supply the basis for jurisdiction.

Therefore, the issue presented is two-fold: First, must the government establish a connection between the federal funds received and the funds embezzled or that there was a threat to the integrity of a federal program? Second, if proof of a connection is required, can that connection be made through a federal program separate from the one that provided the basis for federal jurisdiction?

### A. Existence of a Nexus Requirement Under Section 666.

■ Whether Section 666 requires a connection between the funds received and the funds involved in the charged conduct is a subject of debate among the circuits. This debate has been in part fostered by the Supreme Court decision *Salinas v. United States,* 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997).

In *Salinas,* the petitioner, a former deputy sheriff of Hidalgo County, Texas, was convicted under Section 666 for bribery.[2] *Id.* at 54. Hidalgo County entered into an agreement with the United States Marshals Service whereby the county would take custody of certain federal prisoners in exchange for a grant from the federal government to make improvements to the county's jail. The federal government also agreed to pay the costs of housing each federal prisoner. The defendant was convicted of accepting bribes from a federal prisoner in exchange for "contact visits"

with the prisoner's wife and girlfriend. *Id.* On appeal, the defendant argued that the Government should have been required to prove that the bribe had some effect on federal funds. *Id.* at 55, 118 S.Ct. 469.

The Court began by noting that Section 666's "expansive, unqualified language, both as to the bribes forbidden and the entities covered, does not support the interpretation that federal funds must be affected to violate § 666(a)(1)(B)." *Id.* at 56, 118 S.Ct. 469. According to the Court, the statute "applies to all cases in which an 'organization, government, or agency' receives the statutory amount of benefits under a federal program." *Id.* at 57, 118 S.Ct. 469. The Court continued by touching on the issue of whether Section 666 could ever be unconstitutional without resolving it:

> [f]urthermore, there is no serious doubt about the constitutionality of § 666(a)(1)(B) as applied to the facts of this case. Beltran was without question a prisoner held in a jail managed pursuant to a series of agreements with the Federal Government. The preferential treatment accorded to him was a threat to the integrity and proper operation of the federal program. Whatever might be said about § 666(a)(1)(B)'s application in other cases, the application of § 666(a)(1)(B) to Salinas did not extend federal power beyond its proper bounds.

*Id.* at 60–61, 118 S.Ct. 469.

Limiting its holding to the facts of the case, the Court stated that:

> We need not consider whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds, for in this case the bribe was related to the housing of a

---

**2.** In addition to theft, Section 666 also prohibits bribery, forbidding agents of organizations receiving federal funds in excess of $10,000 from receiving bribes over $5,000, and prohibiting any person from bribing such an agent. 18 U.S.C. § 666(a)(1)(B).

prisoner in facilities paid for in significant part by federal funds themselves. *Id.* at 59, 118 S.Ct. 469. Consequently, the Court left the door open regarding whether or not some nexus must exist between the alleged theft or bribe and the federal funds.

As a result of the Supreme Court's holding in *Salinas*, a circuit split has developed on the issue of whether some sort of nexus or connection must be shown. *See, e.g., United States v. Dakota*, 197 F.3d 821 (6th Cir.1999) (holding that § 666 does not require any connection between the misconduct and federal funds); *United States v. Grossi*, 143 F.3d 348 (7th Cir.1998) (holding that no federal nexus is required); *United States v. Santopietro*, 166 F.3d 88 (2d Cir.1999) (holding that some federal connection to the misconduct is required); *United States v. Zwick*, 199 F.3d 672 (3d Cir.1999) (requiring a connection between the misconduct and a federal interest).

The Ninth Circuit has not entered this debate post-*Salinas*. Nor does this circuit's prior jurisprudence provide much insight as to which side it would align itself with. The leading case discussing the reach of Section 666 is *United States v. Simas*, 937 F.2d 459 (9th Cir.1991). In *Simas*, the defendant was a manager of the Bay Area Rapid Transit District (BART) and was convicted under Section 666 for accepting bribes for the awarding of maintenance and service contracts. *Id.* at 461. Simas argued that because the government did not trace any of the federal funds received by BART to the particular project involved in the bribery, no federal interest was implicated and the Section 666 charge should be dismissed. *Id.* at 463.

The Ninth Circuit did not agree. It explained that, "[t]he broad language of 18 U.S.C. § 666 does not require a tracing of federal funds to the project affected by the bribe or a showing that the defendant had

the authority to administer federal funds." *Id.* at 463. The *Simas* court reasoned that Congress's interest in passing Section 666 was to protect federal funds by guarding the general integrity of entities that receive those funds. *Id.*

While the *Simas* court held that tracing of federal funds was not required in order to sustain a conviction under Section 666, it did not reach the thornier issue left open by *Salinas;* namely, whether there need be any connection at all between the funds received and the misconduct in question. As there is no Ninth Circuit precedent to guide us, we adopt what we believe to be the best approach to this issue, given the current split among the circuits.

As might be expected, two camps have emerged following *Salinas*. On one side, courts have found that the government need not prove a link exists. The Fifth, Sixth, Seventh and Eighth Circuits occupy this camp. *See United States v. Lipscomb*, 299 F.3d 303 (5th Cir.2002); *United States v. Suarez*, 263 F.3d 468 (6th Cir.2001); *United States v. Morgan*, 230 F.3d 1067 (8th Cir.2000); *United States v. Grossi*, 143 F.3d 348 (7th Cir.1998).

In these decisions, courts often rely on earlier precedents, which refused to recognize any nexus requirement. Some also infer that because *Salinas* skirted the issue, rather than impose a requirement when it had the chance, that no requirement is necessary. *See, e.g., Dakota*, 197 F.3d at 826 (holding that no nexus is required in part because *Salinas* left the nature of any necessary connection unanswered); *Morgan*, 230 F.3d at 1067 (*Salinas* no more than suggested a link between the funds and the money was required). Still others find support in the statute itself, based on the fact that the language contains no requirement and the statute is to be broadly construed. *See, e.g., Lipscomb*, 299 F.3d

at 303 (finding that the plain language of the statute does not require a nexus); *Grossi,* 143 F.3d at 350 ("It is not our part to trim § 666 by giving its text a crabbed reading."). All in all, these decisions hold that neither the language of Section 666, nor the dictates of the Supreme Court, require such a nexus. Therefore, it would be inappropriate for the courts to impose one.

The Second, Third and Eleventh Circuits are in the second camp. *See United States v. Edgar,* 304 F.3d 1320 (11th Cir. 2002); *United States v. Zwick,* 199 F.3d 672 (3d Cir.1999); *United States v. Santopietro,* 166 F.3d 88 (2d Cir.1999). As a starting point, some of these courts have also looked to the language of Section 666 to resolve the instant issue. However, rather than find the statute's silence determinative of the lack of the need for a connection, they have found the language ambiguous, requiring the courts to look to the legislative history of Section 666. In *Zwick,* for example, the Third Circuit concluded that Congress intended for some impact, however indirect, on a federally funded program in order to find a violation of Section 666. *Zwick,* 199 F.3d at 684; *see also United States v. Frega,* 933 F.Supp. 1536 (S.D.Cal.1996) (finding that Section 666 was intended to protect the integrity of federal funds and not as a general anti-corruption statute). Other courts like the Second Circuit in *Santopietro,* relied on its pre-*Salinas* precedent to find that a requirement of some connection between the offense conduct and a risk to the integrity of the federally funded program was necessary. The Second Circuit reasoned that *Salinas* did not foreclose it. *Santopietro,* 166 F.3d at 93. Contrary to the cases in the first camp, these cases hold that a federal interest must be implicated for Section 666 to apply.

While there is no definitive answer to this question, we are persuaded that proof of a link between the federal funds and the theft or bribe is necessary. Our review of the case law reveals that the holding of the cases in which a nexus is advocated appear better reasoned because they take into account federalism concerns that are potentially troubling. As the Third Circuit in *Zwick* aptly states:

> If we adopted the government's interpretation that § 666 requires no connection between the offense conduct and federal funds or programming, § 666 would criminalize a host of corrupt acts committed by state agents, among others, by virtue of the fact that all states receive at least $10,000 in federal funds per year. This result raises significant federalism concerns, turning traditionally local conduct into a matter for federal enforcement . . . .

*Zwick,* 199 F.3d at 686 (internal citations omitted).

By not addressing these concerns, the analysis of the courts which have refused to impose a nexus requirement appears a bit shortsighted. Recognizing that *Salinas* has left the door open to impose such a nexus between the funds and the misconduct, these circuits have shied away from the invitation, preferring to stick safely to prior precedents which provide only that the statute be construed broadly. The problem with this reasoning is that it fails to either acknowledge or resolve the issues raised by the circuits that have found that such a requirement is necessary to stay properly within the bounds of federalism.

We find further support for our conclusion from the only post-*Salinas* Supreme Court case interpreting Section 666. In *Fischer v. United States,* 529 U.S. 667, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000), the Court discussed the extent of what may constitute a "benefit" under Section 666. Recognizing the expansive nature of the statute, the Court stated that employing a

broad, almost limitless use of the term benefit "would turn almost every act of fraud or bribery into a federal offense, upsetting the proper federal balance." *Fischer,* 529 U.S. at 681, 120 S.Ct. 1780; *accord Edgar,* 304 F.3d at 1324. Requiring that the application of Section 666 be limited to conduct bearing on the expenditure of federal funds or the protection of the integrity of a federal program keeps Section 666 on firm constitutional ground.

Based on these considerations, we join with the courts that have adopted an offense element requiring that there be a connection between the charged conduct and the expenditure of federal funds by the federal government or the integrity of the operation of a federal program. Finding that such a nexus is required, we now turn to whether there is sufficient evidence in this case to furnish it.

### B. Sufficient Evidence To Support A Nexus.

The government presented evidence of the following at trial. Lander County received benefits in excess of $10,000 as part of the Bulletproof Vest Partnership Grant Program. This grant gave Lander County access to funds for the purpose of purchasing bulletproof vests. As discussed in Section II, receipt of this grant established evidence of the jurisdictional element of Section 666.

Kranovich, however, was not charged with embezzling funds from the Bulletproof Vest Partnership Grant Program. Instead, he was charged with taking money from another account funded through the Federal Equitable Sharing Agreement. Under this agreement, drug forfeitures were shared with Lander County. The evidence at trial demonstrated that Kranovich embezzled over $5,000 of these funds for his own use.

At first glance, we note that the stated facts present a situation that is somewhat different from those discussed in other cases. Generally, a challenge to the lack of a sufficient connection between the federal funds received and the offense conduct arises where the link, if any, between the two is tenuous. Often, this is the case because the misconduct occurs on a local level by agents whose activities bear no connection to the federal funds their agency receives. *See, e.g., Zwick,* 199 F.3d at 688 (no federal interest implicated where bribe related to sewer access and use permits and federal funds provided to a local township were for reimbursement for emergency snow removal services and to prevent stream bank erosion); *Frega,* 933 F.Supp. at 1542 (no threat to the integrity of a federal program where state judges were charged with accepting bribes and none of the federal funding the state received was designated to fund the state court system).

Here, however, there is no question but that the funds received and the funds embezzled implicated a federal interest. Kranovich was charged with embezzling funds that were distributed to Lander County through the Federal Equitable Sharing Agreement, a federal program. The twist is that the funds that Lander County received from the Bulletproof Vest Partnership Grant Program, which serve as part of the jurisdictional basis for Section 666, came from a separate program than the funds Kranovich was found to have embezzled, i.e., the Federal Equitable Sharing Agreement. While this difference may be subtle, it bears on what type of nexus is required.

Courts imposing a nexus requirement have not definitively set forth what that nexus should be. We know only that "the offense conduct would have to somehow implicate a federal interest." *Zwick,* 199 F.3d at 687. The facts of this case provide us with an opportunity to sharpen that

definition. We must decide: whether the connection required between the offense conduct and the federal funds received must touch on the funds used to establish jurisdiction under Section 666; or whether, once the jurisdictional basis is established, the connection can be between the offense conduct and any federally funded program.

At the outset, we recognize that the accepted purpose of Section 666 is to protect the integrity of federal funds. *See Edgar*, 304 F.3d at 1327 (citing S.Rep. No. 225, 98th Cong., 2d Sess. 369–70 (1984)) ("the Federal Government clearly retains a strong interest in assuring the integrity of ... program funds"); *Zwick*, 199 F.3d at 684 (describing the stated purpose of the statute as protecting the integrity of vast sums of money distributed through Federal programs from theft, fraud, and undue influence by bribery); *Simas*, 937 F.2d at 463 (finding "Congress plainly decided to protect federal funds by preserving the integrity of the entities that receive the federal funds ..."). The jurisdictional element is meant to limit the reach of the statute to only cover agencies who receive at least $10,000 in benefits. There is no indication that Section 666 was intended to merely encompass conduct that touched only those funds creating the basis for jurisdiction.

The case law does not tell us otherwise. While we have failed to uncover direct authority on this issue, we think the void is due to the fact that in the usual circumstance, the funds serving as the jurisdictional basis are generally the same as the funds to which a connection with the offense conduct is sought. Courts have no occasion to differentiate between the funds providing jurisdiction and the funds to which the conduct is connected. *See, e.g., Zwick*, 199 F.3d at 684 (finding no connection between bribes for access permits and funds for snow removal and steam bank erosion without specifying which funds

provided the jurisdictional basis); *Santopietro*, 166 F.3d at 93 (holding the requisite connection was met with proof that the city received federal funds for housing and urban development programs and the corrupt payments at issue concerned real estate transactions also without specifying which federal grant provided the jurisdictional basis); *United States v. McCormack*, 31 F.Supp.2d 176 (D.Mass.1998) (jurisdictional funds came from any number of federal grants, each equaling more than $10,000, but nexus was missing because conduct did not bear a relation to any of the grants).

■■■■ Therefore, there is no requirement that jurisdictional funds be the funds to which the offense conduct is linked to create the needed nexus. Indeed, once jurisdiction is established, the required connection can be demonstrated by proof that the conduct affected any federally funded program in which the program's integrity is threatened, even if that program contains less than $10,000 in federal funds.

The construction of other federal criminal statutes lends support to our position that the jurisdictional element need not be connected to the offense conduct. For example, in 18 U.S.C. § 922(g)(1), which prohibits a felon from being in possession of a firearm, there need only be proof that the firearm crossed state lines at some time in order to satisfy federal jurisdiction. Of course, this is in addition to proof that the defendant is a felon and in possession of that firearm. There is no requirement, however, that the defendant possess the gun when it crosses state lines. Therefore, there need not be a connection between that jurisdictional fact and the other elements of the offense. *United States v. Rousseau*, 257 F.3d 925 (9th Cir.2001).

The same is true here. The requirement in Section 666(b) that the local gov-

ernment agency receive in excess of $10,000 in benefits is jurisdictional. The nexus, in contrast, is meant to protect the integrity of programs that the federal government funds. Both the Bulletproof Vest Partnership Grant Program and the Federal Equitable Sharing Agreement provide Lander County with monies to assist them in their law enforcement efforts. One program was to buy bulletproof vests; the other to share forfeiture money to support other efforts of the sheriff's department. The federal government has an interest in protecting the integrity of each program. That Kranovich may have taken from an account funded with federal money, which held less than $10,000.00 does not change this fact.

We find further support for our conclusion in the concept of aggregation. Under Section 666, the government must prove that the defendant stole or embezzled at least $5,000. Aggregating separate instances of theft is an accepted way for the government to meet the $5,000 threshold. *See United States v. Sanderson,* 966 F.2d 184 (6th Cir.1992); *United States v. Urlacher,* 784 F.Supp. 61 (W.D.N.Y.1992). It is also appropriate to apply the precepts of aggregation here. That is to say, the government may aggregate a receipt of federal benefits from different programs to supply the jurisdictional element of Section 666. Likewise, if there is a connection between the offense conduct and any of the federal funds received, which contribute to the total benefits received, the government should be able to use that evidence to prove the required nexus.

 Here, if we aggregate the funds Lander County received from the Federal Equitable Sharing Agreement and the grant received through the Bulletproof Vest Partnership Grant Program, the amount of benefits received well exceeds the $10,000 platform. Were we to consider the forfeiture funds as part of the bene-

fits received, there is a direct link between the money received and the money embezzled, insuring that the interests of federalism are properly served.

In sum, what is paramount to establishing a sufficient nexus is that a federal interest be implicated. That undoubtedly occurred here. The federal government disbursed funds to Lander County through the Federal Equitable Sharing Agreement, which provided that the funds be used solely for law enforcement purposes. Kranovich embezzled those very funds for his own use. The threat to the integrity of that program could not be more evident; nor could the direct connection between the expenditure of funds by the federal government and Kranovich's conduct be more clear.

As we find sufficient evidence that there is a link between the funds received and the funds embezzled, we find that a rational trier of fact could have found that there was a connection between the charged conduct and the expenditure of federal funds under Section 666 beyond a reasonable doubt.

## II. Receipt of Benefits In Excess of $10,000.

Kranovich argues now as he did in his Rule 29(a) motion to acquit during the trial that the government failed to prove that Lander County had received benefits in excess of $10,000 as required under Section 666.

 An established jurisdictional element of Section 666 is that the government agency, here Lander County, receives in any one year period, benefits in excess of $10,000.00 under a Federal program. 18 U.S.C. § 666(b). To satisfy this element, the government presented evidence that as of July 1, 2001, Lander County was approved for $12,775.00 in federal funds under the Bulletproof Vest Partnership

Grant Program. Testimony from Sergeant Quick established that this amount was available to the Sheriff's Department upon request, but that the department only requested and received $1,300.00.

Kranovich does not dispute that the $12,775.00 was available to Lander County. Rather, he argues that Sergeant Quick's testimony that he believed the funds to be available was "unfounded." In addition, he asserts that the money was always under federal control.

We reviewed and rejected this argument when Kranovich raised it in his Rule 29(a) motion. Although the case law on this subject does not provide a definitive explanation of what constitutes "benefits" under Section 666, the Supreme Court provided some insight in *Fischer*, where it stated that to "determine whether an organization participating in a federal assistance program receives 'benefits,' an examination must be undertaken of the program's structure, operation, and purpose." *Fischer*, 120 S.Ct. at 1788. Under these guiding principles, we found that available grant money to be used to purchase bulletproof vests could indeed constitute a benefit. We held that if there was some kind of obligation on behalf of the federal government to provide the funds, then the benefit would be sufficient to meet the requirement of the statute. *See* CT at 59, October 23, 2002. Sergeant Quick's testimony that the $12,775.00 was guaranteed was but one piece of evidence that the jury could consider to establish the required benefit was received.

Kranovich has offered nothing new that persuades us that the evidence presented as to whether a benefit was received was insufficient. Viewing the evidence in a light most favorable to the government, see *Johnson*, 229 F.3d at 894, we find that a rational trier of fact could have found that Lander County received benefits in

excess of $10,000.00 beyond a reasonable doubt.

## MOTION FOR JUDGMENT OF ACQUITTAL AS TO COUNT TWO— THEFT OF GOVERNMENT PROPERTY

■ A violation of 18 U.S.C. § 641 requires that the defendant steal a "thing of value" of the United States in order to be convicted. Kranovich makes the argument, as he did in his Rule 29(a) motion, that the funds at issue here are not property of the United States because the federal government did not exercise oversight of the fund; it didn't have power or authority over the account; and, it did not audit the account. According to Kranovich, "the funds were never federal in nature" and once they entered Lander County's account, they "ceased having any connection to the federal government." Motion at 6. Notably, Kranovich fails to point to any evidence that supports these grand assertions.

When ruling on Kranovich's Rule 29(a) motion, we considered the points he raises now. First, we noted that the government can establish a sufficient interest in the funds, even if commingled, where the federal government exercises supervision and control over the funds and their ultimate use. *United States v. Von Stephens*, 774 F.2d 1411 (9th Cir.1985). We also stated that federal grant money does not lose its federal character simply because it is distributed to a non-federal agency. *United States v. Largo*, 775 F.2d 1099, 1101 n. 3 (10th Cir.1985). Evidence that a federal agency restricted use of grant money and placed conditions upon use of the funds it furnished has been held enough to show a substantial exercise of control over the funds. *United States v. McKay*, 274 F.3d 755 (2d Cir.2001). *See also United States v. Brown*, 742 F.2d 359 (7th Cir.1984).

Contrary to Kranovich's arguments, we found there was evidence of an annual audit; the money would have to be repaid if unused; and, that there were controls over how the money was used sufficient to show that the federal government had control over the funds. Aside from his bare assertions, Kranovich has offered nothing to the contrary. Therefore, we reject the claim that there was insufficient evidence to find that the funds stolen were not property of the United States under Section 641.

### Conclusion

As to Count One, we hold that there is a requirement under Section 666 that a connection exist between the offense conduct and the federal funds disbursed or that the integrity of a federal program is threatened. Applying this requirement to the facts of this case, we find that there is sufficient evidence of such a connection given that funds that were embezzled were obtained through a federal program. That the funds embezzled were not part of what the government alleged was the basis for the jurisdictional element that Lander County receive $10,000 in benefits is of no consequence. The federal government retained a valid interest in insuring the integrity of those funds because Lander County obtained them through the Federal Equitable Sharing Agreement, a federal program. In addition, there was sufficient evidence to support the finding that Lander County in fact received benefits in excess of $10,000 for purposes of satisfying Section 666(b).

As to Count Two, there was sufficient evidence to show that the property stolen was property of the United States under Section 641.

***IT IS THEREFORE HEREBY ORDERED THAT,*** as addressed above, Defendant's Motion for Judgment of Acquittal (# 38) is **DENIED.**