**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Helder C. SIMAS, Defendant–Appellant.**

**No. 89–10367.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 13, 1991.

Decided June 27, 1991.

Ephraim Margolin, San Francisco, Cal., for defendant-appellant.

Charles B. Burch, Asst. U.S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before GOODWIN, TANG and THOMPSON, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

## INTRODUCTION

Helder C. Simas was charged with conspiracy to accept bribes in violation of 18 U.S.C. § 371 (Count 1), accepting a bribe in violation of 18 U.S.C. § 666 (Count 2), and mail fraud in violation of 18 U.S.C. § 1341 (Counts 3 through 6). A jury found Simas guilty on Counts 2 through 6. Simas appeals his convictions. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

## BACKGROUND FACTS

Helder C. Simas was a manager of the Power and Mechanical Division for the Bay Area Rapid Transit District ("BART"). Simas' responsibilities included the initiation of contracts for services and goods needed by his division.

BART used different procedures to award contracts based on the value of the services or goods needed. For contracts exceeding $10,000, BART used a competitive bidding procedure. For contracts under $10,000, Simas had discretion to use an informal bid process or dispense with bids if necessary to complete a particular task. Simas also could use "open purchase orders" by which an indefinite amount of services or goods could be purchased from a particular vendor. If the service or good did not exceed $200, Simas could buy it without prior approval by using a material pick-up authorization ("MPA").

## THE BRIBERY CHARGE

In 1985, James Murphy operated a janitorial service business. In cooperation with the Federal Bureau of Investigation ("FBI"), Murphy recorded a number of conversations with Arnold Flores, manager of BART's Plant Facilities Division, and Frank Gomez, a BART employee who worked for Flores. FBI agent Randall Jannett posed as Murphy's employee and as the owner of his own business. Murphy and Jannett paid numerous "kickbacks" to Flores and Gomez in exchange for BART contracts.

On November 21, 1986, Gomez informed Jannett and Murphy about an escalator-stair cleaning contract in another BART division. Gomez said an unidentified person in that division would make an open purchase order large enough so that Jannett and Murphy would get paid, and the "rest of it goes to him." About two weeks later, Simas submitted a Purchase Order Requisition in the amount of $9650 for Murphy's business to clean the escalator stairs. Gomez later reported the amount of this purchase order to Murphy.

On December 9, 1986, Simas met for the first time with Murphy and Jannett in a yard adjacent to the BART office. Simas instructed Murphy to keep the contract under $10,000 and stated he would show Murphy how to bill for the cleaning of the stairs.

Murphy began work on the stairs. On December 17, 1986 he and Simas agreed to meet at a restaurant to discuss invoicing for the job. On that same day, Gomez told Murphy that Simas had instructed him that Murphy should bill a total amount of $5,790 for his work, of which $1790 was for costs, $2000 was for Murphy, and $2000 was for "him."

On December 23, 1986, Simas and Murphy met at the restaurant to go over the billing. Although Murphy told Simas his costs for the project were only $1800, the two discussed a bill for $5790. Murphy later submitted a bill for $5790. After BART paid the bill, Murphy and Jannett met with Simas. In a restaurant parking lot, Jannett handed Simas $2000 in cash and stated "half for you, half for us." Simas took the money and said "Frank will be happy."

## THE MAIL FRAUD CHARGES

In June 1987, FBI Agent Elizabeth Castaneda began buying items for the personal use of Flores and Gomez. The cost of these items was billed to BART. In November 1987, Castaneda obtained an open purchase order from Simas. Simas instructed Castaneda that the billing slips could not exceed $200 and that "we may have to lie and cheat."

As items Simas requested were bought for him, Castaneda would advise Simas of the total cost for the goods. Simas would then divide the total into $200 increments and incorrectly describe the items purchased. A number of these items were found at Simas' home during the execution of a search warrant. Use of the United States mail in connection with these events is not in issue.

## DISCUSSION

### A. Entrapment Instructions

■ The district court denied Simas' request for an entrapment instruction on the ground that the instruction was inconsistent with Simas' defense that he lacked the intent necessary for his conviction. The district court erred by basing its refusal to give the requested instruction on this ground. *See Mathews v. United States,* 485 U.S. 58, 62, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988) (defendant is entitled to instruction when evidence supports instruction even if the defendant denies an element of the crime). After a de novo review of the record, however, we conclude the evidence presented did not warrant an entrapment instruction, and thus the district court did not err in refusing to give it. *United States v. Burnette,* 698 F.2d 1038, 1048 (9th Cir.) (we may affirm the district court on any basis fairly presented in the record, that as a matter of law, sustains the judgment), *cert. denied,* 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983).

Inducement has been defined as "repeated and persistent solicitation" or "persuasion" which overcomes the defendant's reluctance. *United States v. Reynoso–Uloa,* 548 F.2d 1329, 1335–36 (9th Cir.1977)

(quoting *Sorrells v. United States,* 287 U.S. 435, 441, 53 S.Ct. 210, 212, 77 L.Ed. 413 (1932)), *cert. denied,* 436 U.S. 926, 98 S.Ct. 2820, 56 L.Ed.2d 769 (1978). Mere suggestions or the offering of an opportunity to commit a crime is not conduct amounting to inducement. *United States v. Barry,* 814 F.2d 1400, 1402 n. 2 (9th Cir.1987); *United States v. Busby,* 780 F.2d 804, 807 (9th Cir.1986).

■ The record is devoid of any evidence that the government *induced* Simas to commit the crimes. Accordingly, we need not consider whether there was evidence of Simas' lack of predisposition.

### B. Mail Fraud Instructions

Simas contends the district court erred in its instructions to the jury concerning the mail fraud counts. Specifically, Simas objects to the word "ordinarily" in the following jury instruction:

"Intent to Defraud" means to act knowingly and with the specific intent to deceive, *ordinarily* for the purpose of either causing some financial loss to another, or bringing about some financial gain to one's self.

Reporter's Transcript at 997 (emphasis added). Simas argues the word "ordinarily" allowed the jury to convict him of mail fraud on the basis of evidence of his deception in dividing MPAs into $200 increments and misdescribing the items purchased. Simas contends the instruction was erroneous because it allowed the jury to find him guilty of mail fraud based solely on his improper acts with regard to the MPAs, even if these acts were done for the purpose of avoiding bureaucratic red tape as he contended. Simas argues this alleged error requires reversal under *McNally v. United States,* 483 U.S. 350, 358–60, 107 S.Ct. 2875, 2880–82, 97 L.Ed.2d 292 (1987) (holding mail fraud statute protects against the deprivation of monetary or property rights but not intangible rights); *see also United States v. Hilling,* 891 F.2d 205, 207 (9th Cir.1988), *cert. denied,* — U.S. —, 110 S.Ct. 546, 107 L.Ed.2d 543 (1989).

■ We review jury instructions "as a whole to determine if they are misleading

or inadequate." *United States v. Spillone,* 879 F.2d 514, 525 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990). The district court's instructions specifically told the jury they had to find Simas intended to deprive BART of money or property to convict him of the mail fraud counts. The district court instructed the jury that they had to find the scheme was intended "to deceive someone in order to obtain money or property," and that the "scheme" included "any plan ... intended ... to obtain ... money or property from persons so deceived." Taken as a whole, the jury instructions were not misleading or inadequate.

## C. Failure to Dismiss the Bribery Counts

At trial, the parties stipulated that BART is a local government agency that received in excess of $10,000 of federal funds in each of the years 1985 through 1988. The evidence established that the stair-cleaning project involved a sum in excess of $5,000. Simas argues that the district court should have dismissed the bribery counts because the prosecution failed to trace any of the federal funds to the stair-cleaning project.

 The broad language of 18 U.S.C. § 666 does not require a tracing of federal funds to the project affected by the bribe or a showing that the defendant had the authority to administer federal funds.[1] Only two requirements relevant to this appeal must be met to bring a defendant within section 666. First, the defendant must be an "agent" of a "government agency" that receives in excess of $10,000 from the federal government within a one-year period. 18 U.S.C. § 666(b). Second, the defendant must accept a bribe relating to "*any* ... transaction ... involving $5,000 or more." § 666(a)(1)(B) (emphasis added). Contrary to Simas' contention, the language of the statute does not require the project affected by the bribe to be " '*any federally funded* transaction involving $5,000.' " *See United States v. Westmoreland,* 841 F.2d 572, 576 (5th Cir.) (em-

phasis added), *cert. denied,* 488 U.S. 820, 109 S.Ct. 62, 102 L.Ed.2d 39 (1988).

By enacting section 666, Congress plainly decided to protect federal funds by preserving the integrity of the entities that receive the federal funds rather than requiring the tracing of federal funds to a particular illegal transaction. *See id.* at 578. As the Fifth Circuit noted:

> [A]ny reference to federal funds is conspicuously absent from the operative provisions, and it is clear that Congress has cast a broad net to encompass local officials who may administer federal funds, regardless of whether they actually do.

*Id.* at 577.

We conclude the government was not required to trace federal funds to the stair-cleaning project to establish Simas' violation of 18 U.S.C. § 666.

## D. Ineffective Assistance of Counsel

 Simas contends he received ineffective assistance of counsel because his trial counsel failed to investigate and pursue an "outrageous government conduct" defense. The more appropriate way to pursue this ineffective assistance of counsel claim is by way of a habeas corpus proceeding. Collateral review is preferable because in such a proceeding a record may be developed to show what counsel did and any resulting prejudice. *See United States v. Pope,* 841 F.2d 954, 958 (9th Cir.1988). Accordingly, we decline to resolve Simas' ineffective assistance of counsel argument in this direct appeal.

## E. "Other Acts" Evidence

 Simas argues the district court erred by admitting "other acts" evidence pursuant to Federal Rule of Evidence 404(b). We review for abuse of discretion the district court's admission of other acts evidence and its conclusion that the probative value of the evidence outweighs any prejudicial effect. *United States v. Conners,* 825 F.2d 1384, 1390 (9th Cir.1987).

---

1. Simas alleges he could not have controlled any federal monies because "BART receives federal funds for new construction but not for maintenance," and "Simas' division was exclusively responsible for maintenance." Appellant's Opening Brief at 34 n. 19.

Under Federal Rule of Evidence 404(b), other acts evidence may not be introduced to prove the defendant acted in conformity with his character, but may be used to prove an element of the crime charged, such as intent. Fed.R.Evid. 404(b). The district court also may exclude the evidence if its unfair prejudice outweighs its probative value. Fed.R.Evid. 403; *see also United States v. Bailleaux*, 685 F.2d 1105, 1110 (9th Cir.1982).

■ The evidence Simas objects to includes other instances in which Simas used items purchased at BART's expense for his personal use, an instance in which Simas kept an item at his home for over one year, and an instance in which he asked a BART vendor to misdescribe items purchased. This evidence is relevant to the mail fraud counts because it is probative of Simas' intent to defraud BART. Further, although this testimony may have been damaging, Simas does not indicate how the evidence resulted in *unfair* prejudice. The district court did not abuse its discretion under Federal Rules of Evidence 404(b) or 403.

■ Finally, Simas argues the district court erred by failing to give the jury a limiting instruction explaining that the other acts evidence was relevant to the mail fraud counts but not to the bribery counts. We disagree.

The district court did give a limiting instruction.[2] Simas' counsel did not object to the limiting instruction, nor did he request any other instruction. We conclude that the limiting instruction as given by the district court did not result in plain error. *See United States v. Potter*, 616 F.2d 384,

389–90 (9th Cir.1979), *cert. denied*, 449 U.S. 832, 101 S.Ct. 101, 66 L.Ed.2d 37 (1980).

### F. Lay Opinion Testimony

Simas contends the district court erred by admitting lay opinion testimony from FBI agents concerning their understanding of what Simas meant to convey by his vague and ambiguous statements during the course of the alleged crimes. Simas argues this testimony was inadmissible under Federal Rule of Evidence 701 and, in the alternative, its unfair prejudicial effect outweighed any probative value. *See* Fed. R.Evid. 403.

■ The admission of lay opinion testimony is "within the broad discretion of the trial judge [and] not to be disturbed unless it is manifestly erroneous." *United States v. Fleishman*, 684 F.2d 1329, 1335 (9th Cir.), *cert. denied*, 459 U.S. 1044, 103 S.Ct. 464, 74 L.Ed.2d 614 (1982). Except for one instance, Simas' trial counsel failed to object to the testimony which his appellate counsel now challenges.[3] Therefore, except for the single objection made at the time of trial, we review for plain error. *United States v. Smith*, 790 F.2d 789, 793 (9th Cir.1986).

■ For lay opinion testimony to be admissible, the opinion must be (1) "rationally based on the perception of the witness" and (2) must be helpful to the jury in acquiring a "clear understanding of the witness' testimony or the determination of a fact in issue." Fed.R.Evid. 701.

Each FBI agent testified about statements made to that agent. This was sufficient to satisfy the first requirement of Rule 701. *See* 3 D. Louisell, C. Mueller, Federal Evidence § 376, at 618 (1979) (stat-

---

**2.** The court instructed the jury:

You have heard evidence that the defendant committed acts similar to the crimes charged here. You may consider such evidence, not to prove that the defendant did the acts charged here, but only to prove defendant's state of mind, that is, that the defendant acted with the necessary intent and not through accident or mistake.

Therefore, if you find ... that the government has proved beyond a reasonable doubt that defendant committed the acts charged in the

indictment, and that the defendant committed similar acts at other times, then you may consider these similar acts as evidence that the defendant committed the acts charged here deliberately and not through accident or mistake.

**3.** Simas argues additional objections would have been futile. Given the circumstances of this case, *see* Reporter's Transcript at 348, we reject this argument. *See United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989).

ing first requirement is simply a restatement of the personal knowledge requirement necessary for all lay witness testimony).

As to the second requirement, a lay witness' opinion concerning the witness' understanding of the declarant's statements or conduct may be helpful to the jury. *See Burnette*, 698 F.2d at 1051 (officer's opinion that defendant was removing license plates from car), *cert. denied*, 461 U.S. 936, 103 S.Ct. 2106, 77 L.Ed.2d 312 (1983); *United States v. De Peri*, 778 F.2d 963, 977–78 (3d Cir.1985) (witness testifies to understanding of defendant's ambiguous references and unfinished sentences), *cert. denied*, 475 U.S. 1110, 106 S.Ct. 1518, 89 L.Ed.2d 916 (1986). In addition, we previously have allowed law enforcement officers to give their opinion that the defendant's activities match "the usual criminal *modus operandi*." *United States v. Espinosa*, 827 F.2d 604, 611–13 (9th Cir.1987) (detective testifies transaction involving defendant appeared to be a drug transaction), *cert. denied*, 485 U.S. 968, 108 S.Ct. 1243, 99 L.Ed.2d 441 (1988); *see also Fleishman*, 684 F.2d at 1335 (DEA agent testifies defendant acted as lookout for narcotic transaction).

Simas' statements to the FBI agents were vague and, at times, seemingly incomprehensible. The listener's understanding of the words and innuendo was helpful to the jury in determining what Simas meant to convey. The probative value of the opinion testimony was strong and outweighed any unfair prejudicial effect. The district court did not abuse its discretion by admitting the testimony to which Simas objected at trial, nor did the court commit plain error in admitting the testimony to which Simas objects for the first time on appeal.[4]

**G. Hearsay**

■ Finally, Simas contends the district court erred by excluding as hearsay FBI Agent Drew Empey's proffered testimony that Arnold Flores told Empey, "the only

thing [Flores] knew Mr. Simas may be involved in that was illegal was possibly that linoleum." Simas argues this testimony falls within the hearsay exceptions of Federal Rules of Evidence 803(24), 804(b)(3), and 804(b)(5). We disagree.

The statement was offered to prove the truth of the matter asserted. It was hearsay, it did not fall within any exception, and it was properly rejected. Moreover, in response to the district court's hearsay ruling at the time of trial, Simas' trial counsel did not suggest any hearsay exception applied. Our review, therefore, is for plain error, *United States v. Sims*, 617 F.2d 1371, 1377 (9th Cir.1980), and we find none.

AFFIRMED.

---

4. Simas also argues he received ineffective assistance of counsel because his trial counsel failed to object to the lay opinion testimony.

Again, the more appropriate method to present this claim is by way of a collateral proceeding. *See Pope*, 841 F.2d at 958.