**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James COLEMAN, Defendant–
Appellant.**

No. 99–50018.

D.C. No. CR–97–01085–R.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted July 12, 2001.

Decided Aug. 7, 2001.

Before FARRIS, SILVERMAN, and PAEZ, Circuit Judges.

## MEMORANDUM *

James Coleman appeals his convictions and 137–month concurrent sentences for conspiracy to distribute cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1) ("Count One") and distributing, or aiding and abetting in the distribution of, cocaine in violation of 21 U.S.C. § 841(a)(1) ("Count Three"). We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm the conviction and sentence for Count One and reverse the conviction for Count Three.

## I. Sufficiency of the Evidence & Denial of Rule 29 Motions

■ Coleman asserts that the evidence presented at trial was insufficient to sustain the guilty verdicts against him on both counts. Coleman preserved his right on appeal to test the sufficiency of evidence because he made a motion for judgment of acquittal under Fed.R.Crim.P. 29 at the close of the government's case in chief and again at the close of all evidence. *See United States v. Yossunthorn,* 167 F.3d 1267, 1270 n. 4 (9th Cir.1999). We will find sufficient evidence to support a conviction if, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Wright,* 215 F.3d 1020, 1025 (9th Cir.2000).

■ Coleman also asserts that the district court erred in denying his Rule 29 motions. We apply the same standard of review as a challenge to the sufficiency of the evidence. *United States v. Stoddard,* 150 F.3d 1140, 1144 (9th Cir.1998).

### A. Count One (conspiracy)

■ To prove conspiracy, "the government must show '(1) an agreement to accomplish an illegal objective; (2) the commission of an overt act in furtherance of the conspiracy; and (3) the requisite intent necessary to commit the underlying offense.'" *United States v. Lennick,* 18 F.3d 814, 818 (9th Cir.1994) (internal citations omitted). "Although an agreement may be inferred from the defendant's acts or from other circumstantial evidence, 'simple knowledge, approval of, or acquiescence in the object or purpose of a conspiracy, without an intention and agreement to accomplish a specific illegal objective, is not sufficient.'" *Id.* (internal citations omitted).

■ Here, Coleman offered to sell Michel Withers cocaine for $14,800 per kilogram one month prior to the transaction in question. Although this offer was never accepted, Coleman subsequently agreed to assist co-conspirator Robert Abdelkader, who had himself agreed to deliver up to 15 kilograms of cocaine to Withers at $14,500 per kilogram. Specifically, on the day of the transaction in question, Coleman told Withers that he would be accompanying Abdelkader, arranged a time to meet Withers, and told Withers that he would

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

need a bag (presumably to transport the contraband). Coleman drove with Abdelkader to the meeting place, where they met Withers. Coleman then drove away and, upon discovering that he was being followed, engaged in "countersurveillance driving"—driving slow, then fast, and making sharp turns. Viewed in the light most favorable to the government, this evidence is sufficient for a rational trier of fact to find beyond a reasonable doubt that Coleman had an agreement with Abdelkader and/or Withers to distribute cocaine, that he intended to distribute cocaine, and that he committed an overt act in furtherance of the distribution of cocaine. *See United States v. Reyes–Alvarado,* 963 F.2d 1184, 1188 (9th Cir.1992) (finding sufficient evidence to support conviction of drug-related conspiracy where defendant was seen looking around in possibly a counter-surveillance position, drove the vehicle with the drugs, and was present when the drug buy took place). Accordingly, the guilty verdict on Count One is supported by sufficient evidence and the district court did not err in denying Coleman's Rule 29 motions on this count.

### B. Count Three (distribution)

■ Count Three alleges that Coleman distributed, or aided and abetted in the distribution of, in excess of one kilogram of cocaine on or about May 29, 1996. The government, however, introduced no direct evidence that any cocaine or money from this particular transaction was ever recovered. An agent observed the transaction from a block away but could not see any cocaine or money from that distance. After the transaction, agents followed and searched Coleman's vehicle but did not find any money or drugs. The agents elected not to follow Withers' vehicle and thus never had the opportunity to search his vehicle.

The government argues that a jury could have inferred that the alleged drug transaction took place from the following additional evidence introduced at trial: (1) an intercepted phone conversation two days earlier in which co-conspirator Mary Johnson complained to Withers that she had no cocaine to sell and Withers told her he was trying to procure some; (2) an observed meeting between Withers and Johnson shortly after the May 29 transaction with Coleman and Abdelkader; (3) an intercepted conversation between Johnson and Withers two days later in which they discuss a proposed sale of cocaine to a confidential informant ("CI"); (4) Johnson's sale of 8 ounces of cocaine to the CI later that day; and (5) the existence of a secret compartment discovered one year later in the vehicle driven by Coleman on May 29 (which explains the agents' failure to find any contraband in their May 29 search of the vehicle). The government maintains that a jury could rationally infer from this circumstantial evidence that the cocaine Johnson sold to the CI on May 31 was cocaine she obtained from Withers who, in turn, obtained it from Coleman and Abdelkader on May 29. We agree that this inference is rational, but we conclude that a rational jury could not have made this inference beyond a reasonable doubt. Johnson was not under round-the-clock surveillance, and thus the government could not refute the reasonable possibility that she obtained her cocaine from another source. Given this significant gap in surveillance and absence of any drug or money evidence recovered on May 29, we hold that the evidence, even when viewed in the light most favorable to the government, was insufficient to support Coleman's conviction on Count Three. Accordingly, we conclude that the district court erred in denying Coleman's Rule 29 motion on this count.

## II. Co–Conspirator Statement

■ Coleman also asserts that the district court erred by permitting the intro-

duction of the September 18 conversation between Withers and "Joe" in which Withers discusses Coleman's participation in the May 29 transaction. Because Coleman did not object to the introduction of this evidence at trial, we review for plain error. *See* Fed.R.Crim.P. 52(b); *Jones v. United States*, 527 U.S. 373, 388, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999); *United States v. Vincent*, 758 F.2d 379, 381 (9th Cir.1985).

■ Even if we assume that the district court erred in admitting this evidence, Coleman fails to show that it affected his substantial rights by affecting the outcome of the district court proceedings. *See United States v. Lussier*, 128 F.3d 1312, 1317 (9th Cir.1997). In applying the plain error standard, we consider "all circumstances at trial including the strength of the evidence against the defendant." *United States v. Campbell*, 42 F.3d 1199, 1204 (9th Cir.1994) (internal citation and quotation marks omitted). Withers' comment that Coleman "took care of everything" on May 29 was cumulative evidence not necessary to his conspiracy conviction. The overt act requirement was satisfied by evidence that Coleman drove to the location of the meeting and engaged in countersurveillance driving after leaving. Thus, the district court's failure to exclude sua sponte the evidence of the conversation with "Joe" did not "seriously affect[ ] the fairness, integrity, or public reputation of the judicial proceedings" such that it constituted plain error. *United States v. Vences*, 169 F.3d 611, 613 (9th Cir.1999).

### III. Testimony of Agent Gomez

Coleman also asserts that the district court erred in admitting the testimony of Special Agent Gomez concerning the meaning of certain slang used by the co-conspirators in their recorded conversations. Because no objection was raised at trial, we review for plain error.

### A. Phrases Specific to this Conspiracy

■ Agent Gomez's interpretation of phrases specific to this conspiracy—such as "on the three"—is admissible as lay opinion testimony because it is (1) rationally based on the perception of Agent Gomez and (2) helpful to the jury. *See United States v. Simas*, 937 F.2d 459, 464 (9th Cir.1991) (citing Fed.R.Evid. 701). Agent Gomez testified that he listened to dozens of recordings of the co-conspirators in this case numerous times and that he participated in surveillance of the defendants on numerous occasions. Given his familiarity with the co-conspirators, he was in a position to provide helpful explanations of phrases that the jury might otherwise not have understood. *See id.* at 465 (explanatory testimony of FBI agents familiar with the case was admissible lay opinion testimony because it helped the jury to understand the "vague" and "seemingly incomprehensible" remarks of defendant).

### B. General Drug Dealing Jargon

■ Agent Gomez also provided testimony on the meaning of general drug jargon used by the co-conspirators, including such phrases as "eight zone," "bomb," and "take it loose." Because his knowledge of these terms was likely not the result of observations made while working on this case, he should have been qualified as an expert witness. We have held that "the jargon of the narcotics trade and the codes that drug dealers often use constitute specialized bodies of knowledge—certainly beyond the ken of the average juror—and are therefore proper subjects of expert opinion." *United States v. Plunk*, 153 F.3d 1011, 1017 (9th Cir.1998), *as amended*, 161 F.3d 1195 (1998).

■ The failure to qualify a witness as an expert, however, is harmless if the court can determine on the record that the witness could have been qualified as an

expert under Fed.R.Evid. 702. *United States v. Mendoza*, 244 F.3d 1037, 1046 (9th Cir.2001). Agent Gomez testified on cross-examination that he had eight years of training and experience at the FBI, exclusively investigating drug trafficking, and that he had taken numerous courses on conducting drug trafficking investigations, both while at the FBI and, earlier, as a Los Angeles police officer. This background would have been sufficient to qualify Agent Gomez as an expert on drug dealing jargon. *See Plunk*, 153 F.3d at 1017. Thus, the district court's failure to qualify him as an expert witness was harmless error (and therefore could not be plain error).

### IV. *Apprendi* Error

 Coleman next asserts that the district court violated the rule established by *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), by calculating his sentence based on two kilograms of cocaine, when this amount had not been determined by the jury beyond a reasonable doubt. Because Coleman did not object at sentencing, we review for plain error. *United States v. Antonakeas*, 255 F.3d 714, 726–727 (9th Cir.2001). Plain error exists in this context only when a defendant receives a sentence above the statutory maximum for the crime for which he was found guilty beyond a reasonable doubt. *Id.* at 728. The statutory maximum penalty for any detectable amount of cocaine is 20 years. 21 U.S.C. § 841(b)(1)(C). Coleman's sentence of 137 months is less than 20 years and therefore not plain error.

### V. Ineffective Assistance of Counsel

Finally, Coleman asserts that he received ineffective assistance of counsel because his attorney failed to object to the introduction of the September 1996 conversation between Withers and Joe or to the testimony of Agent Gomez on the meaning of certain phrases used by defendants in their recorded conversations. "Claims of ineffective assistance of counsel are generally inappropriate on direct appeal. Such claims normally should be raised in habeas corpus proceedings, which permit counsel to develop a record as to what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Ross*, 206 F.3d 896, 900 (9th Cir.2000) (internal citations and quotation marks omitted). On the record before us, we reject this claim because we can see no objectively deficient performance by counsel and certainly nothing that affected the outcome of the trial. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

### VI. Conclusion

We AFFIRM Coleman's conviction and sentence for Count One. We REVERSE Coleman's conviction for Count Three and REMAND for modification of the judgment.