**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Sharron BYNUM, Defendant–Appellant.**

**No. 02–10016.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 2002.

Filed April 30, 2003.

William M. Domingo, Assistant Federal Public Defender, Honolulu, HI, for the defendant-appellant.

J. Michael Seabright, Assistant United States Attorney, Honolulu, HI, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, ALARCÓN, and FISHER, Circuit Judges.

## OPINION

ALARCÓN, Circuit Judge.

Sharron Bynum ("Bynum") appeals from the judgment entered by the district court following her conviction for aiding and abetting former City and County of Honolulu Councilman Andrew K. Mirikitani ("Mirikitani") in intentionally and knowingly obtaining by fraud, and converting property of the City and County of Honolulu ("Honolulu"), in violation of 18 U.S.C. § 666, and of affecting interstate commerce by aiding and abetting Mirikitani in committing extortion, under color of official right in violation of 18 U.S.C. §§ 1951, 2. Bynum challenges the facial constitutionality of § 666 and the determination by the district court, instead of the jury, regarding whether there was a federal nexus to the violation of § 666. Bynum also appeals from the two-level upward adjustment of her sentence imposed pursuant to U.S.S.G. § 2C1.1(b)(1) and the eight-level upward adjustment of her sentence imposed pursuant to U.S.S.G. § 2C1.1(b)(2)(B).

We conclude that § 666 is facially constitutional and that the district court did not err in determining that the finding of a federal nexus for the valid application of § 666 is a question of law for the court. We also hold that the district court did not err in imposing a two-level sentence enhancement pursuant to U.S.S.G. § 2C1.1(b)(1) and an eight-level sentence enhancement as required by U.S.S.G. § 2C1.1(b)(2)(B).[1]

I

Mirikitani was a member of the Honolulu City Council in 1999. At that time, Bynum was Mirikitani's live-in romantic companion. She ran his council office. In

---

**1.** The district court had jurisdiction pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

1999, Honolulu's gross annual budget was approximately one billion dollars. Roughly one hundred forty million dollars of its budget came from the federal government in the form of grants and programs for capital and operating expenses. Honolulu received approximately $898,224 of un-segregated federal funds in 1999.

In June of 1999, Mirikitani offered to authorize an $11,000 bonus to a part-time staff member, John Serikawa ("Serikawa"), if Serikawa would agree to pay Mirikitani one-half of the after-tax gain resulting from the bonus. Mirikitani also promised to make Serikawa a full-time employee and increase his annual salary from $23,000 to $28,000. Serikawa accepted the proposal and received a bonus of $9,617 paid out of Honolulu's general fund.

When a dispute arose between Mirikitani and Serikawa as to the proper sum for the agreed-upon kickback, Mirikitani referred him to Bynum to determine the correct amount. At Bynum's request, Mirikitani demanded that Serikawa submit his bonus pay stub to her for inspection. When the pay stub was returned to Serikawa, it contained Bynum's handwritten notes and calculations.

A few weeks later, when Serikawa was taking care of Bynum and Mirikitani's residence during their absence, he left one of the kickback payments on a counter in their apartment. Serikawa also paid part of the expenses for a trip taken by Mirikitani and Bynum to celebrate her birthday. Bynum was aware of Serikawa's contribution to the cost of the trip. She told

Serikawa that the balance of $114 dollars owed to Mirikitani was forgiven.

In May or June of 1999, Mirikitani made a similar kickback proposal to Cynthia McMillan ("McMillan"), another of his Honolulu employees. Mirikitani instructed McMillan that the kickback was to be paid by check to Mirikitani's campaign fund. McMillan received a bonus of approximately $16,916 on July 15, 1999. On the same date, McMillan transmitted checks to Mirikitani's campaign fund in the amount of $4,000 from her own bank account and $250 from her husband's bank account. At trial, McMillan testified that she understood that a refusal to engage in Mirikitani's kickback scheme might lead to "a bad working relationship or something."

Bynum discussed McMillan's participation in the kickback scheme with her on two occasions during the summer of 1999. In one conversation, Bynum told McMillan that the "kickback couldn't have come at a better time" for Bynum and Mirikitani "because they had a lot of bills." In another conversation, Bynum told McMillan that the kickback scheme permitted Bynum to be paid for the work she performed in Mirikitani's council office. At trial, the Government presented evidence that Bynum covered up McMillan's kickback in a campaign spending report.

## II

■ Bynum contends that § 666 is facially unconstitutional "because it does not require a connection between the alleged criminal conduct ... and the federal funds distributed to the states by Congress."[2]

---

**2.** 18 U.S.C. § 666 provides in pertinent part:
(a) Whoever, if the circumstances described in subsection (b) of this section exists—
(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—

(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
(i) is valued at $5,000 or more, and

Bynum did not attack the facial constitutionality of § 666 in the district court. The Supreme Court has left the question whether to review an issue first introduced on appeal "to the discretion of the courts of appeals." *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976). This court has previously reached purely legal questions not raised before the district court. *See, e.g., United States v. Ballek*, 170 F.3d 871, 873 n. 1 (9th Cir.1999) (exercising this court's discretion to overlook a federal criminal defendant's waiver of an argument pursuant to the Thirteenth Amendment); *In re Eashai*, 87 F.3d 1082, 1085 n. 2 (9th Cir.1996) (exercising this court's discretion to hear a pure matter of law not raised in the district court). Because a facial challenge to the constitutionality of a statute is a question of law, we will exercise our discretionary power to consider Bynum's constitutional challenge to § 666. We review questions regarding the constitutionality of a statute de novo. *United States v. Carranza*, 289 F.3d 634, 643 (9th Cir.2002).

The Supreme Court has ruled that "[a] facial challenge to a legislative Act is … the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). "We [have] recently reaffirmed the vitality of the *Salerno* standard outside of First Amendment cases." *Kim v. Ziglar*, 276 F.3d 523, 527 (9th Cir.2002) (citing *S.D. Myers, Inc. v. City & County of San Francisco*, 253 F.3d 461, 467 (9th Cir.2001) (holding that the *Salerno* standard "is the correct standard in every context, with the exception of certain First Amendment cases … [and] in the context of facial challenges to abortion statutes")), *cert. granted on other grounds sub nom., Demore v. Kim*, 536 U.S. 956, 122 S.Ct. 2696, 153 L.Ed.2d 833 (2002).

■ To be successful in her facial challenge to the constitutionality of § 666, Bynum must demonstrate that there is no set of circumstances in which the statute could be applied in a constitutionally valid manner. *Salerno*, 481 U.S. at 745, 107 S.Ct. 2095. In *Salinas v. United States*, 522 U.S. 52, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), the Supreme Court upheld the conviction under § 666 of a county sheriff's deputy for receiving a bribe from a federal prisoner who was housed in the county jail pursuant to a federally funded program. The Court determined that because the bribe at issue posed "a threat to the integrity and proper operation of the federal program," *id.* at 61, 118 S.Ct. 469, the nexus between the defendant's conduct and the expenditure of federal funds was "close enough to satisfy whatever connection the statute might require," *id.* at 59, 118 S.Ct. 469. The Court held that "there is no serious doubt about the constitutionality of § 666(a)(1)(B) as applied to the facts of this case." *Id.* at 60, 118 S.Ct. 469.

(ii) is owned by, or is under the care, custody, or control of such an organization, government, or agency …

. . . .

(2) corruptly gives, offers, or agrees to give anything of value to any person, with intent to influence or reward an agent of an organization or of a State, local or Indian tribal government, or any agency thereof, in connection with any business, transaction, or series of transactions of such organization, government, or agency involving anything of value of $5,000 or more;

. . . .

(b) The circumstances referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance . . . .

In *Salinas,* the Court specifically refuted the argument that § 666 exceeds Congress's Spending Clause powers. The Court instructed that "the application of § 666(a)(1)(B) to Salinas did not extend federal power beyond its proper bounds." *Id.* at 61, 118 S.Ct. 469.

The Courts of Appeals for the Eighth and the Eleventh Circuits have both expressly held that § 666 is facially constitutional. *United States v. Sabri,* 326 F.3d 937, 2003 WL 1792150 (8th Cir.2003), 2003 U.S.App. LEXIS 6513; *United States v. Edgar,* 304 F.3d 1320 (11th Cir.2002), *cert. denied,* —— U.S. ——, 123 S.Ct. 679, 154 L.Ed.2d 577 (2002). The Eleventh Circuit reasoned as follows:

> [A] basis for the enactment of § 666 may be found in Congress's authority, under the Necessary and Proper Clause, to protect its capacity to fruitfully exercise the spending power. As a means of ensuring the efficacy of federal appropriations to comprehensive federal assistance programs, the anti-corruption enforcement mechanism strikes us as bearing a sufficient relationship to Congress's spending power to dispel any doubt as to its constitutionality.

*Id.* at 1325 (citing Art. I § 8, cl. 18); *accord Sabri,* 326 F.3d 937, 2003 WL 1792150, 2003 U.S.App. LEXIS 6513 at *32–40. We agree with the Eighth and Eleventh Circuits that § 666 is facially constitutional.

### III

■ Alternatively, Bynum argues that a federal nexus is required for a valid application of § 666. We review questions of law de novo. *Harper v. United States Seafoods LP,* 278 F.3d 971, 973 (9th Cir. 2002).

In *United States v. Cabrera,* 328 F.3d 506 (9th Cir.2003), we followed the approach taken by the Supreme Court in

*Salinas* and "left open the question" as to " '*whatever connection the statute might require* ' " between the defendant's conduct and federal funds. *Cabrera,* 328 F.3d at 509 (citing and quoting *Salinas,* 522 U.S. at 59, 118 S.Ct. 469). Although in *Cabrera* we determined that "the facts presented [therein] satisf[ied] any requirement of a federal nexus," *id.* at 510, we noted that "the Court [has] cautioned against 'turn[ing] every act of fraud or bribery into a federal offense . . . ,' " *id.* at 509 (quoting *Fischer v. United States,* 529 U.S. 667, 681, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000)).

In *Cabrera,* we set forth the requirements for a prosecution pursuant to § 666. We specified that "following the language of the statute, we [have] ruled that only two elements are required to sustain a conviction under § 666:(i) the defendant must be an agent of a government agency receiving $10,000 or more in federal funding annually, and (ii) the [proscribed] transaction . . . must exceed $5,000." *Id.* at 509 (citing *United States v. Simas,* 937 F.2d 459, 463 (9th Cir.1991)). "These requirements parallel § 666 exactly." *Id.* at 509. Additionally, "we held that the defrauded program or agency must receive federal funding directly, and that entities receiving only indirect benefits of federal funding . . . are not within the purview of [§ 666]." *Id.* at 509 (citing *United States v. Wyncoop,* 11 F.3d 119 (9th Cir.1993)). We also stated in *Cabrera* that "the [Supreme] Court [has] said that the government need not prove that federal funds were actually stolen, and thus rejected the need to show a direct connection to a federal interest." *Id.* at 509 (citing *Salinas,* 522 U.S. at 60, 118 S.Ct. 469).

■ Bynum was convicted of aiding and abetting Mirikitani in stealing more than $5,000 from Honolulu's general fund, which

contained more than $898,224 in unsegregated federal funds. At trial Bynum stipulated that Mirikitani was one of nine council members whose votes controlled the disbursement of civic funds derived from federal funding. Accordingly, we conclude that evidence was sufficient to demonstrate a federal nexus, if one is required. As was the case in *Cabrera*, "[t]o require a greater showing of federal interest on these facts would amount to a requirement of direct tracing, which both the Supreme Court and the Ninth Circuit have rejected." *Cabrera*, 328 F.3d at 510 (citing *Salinas*, 522 U.S. at 60, 118 S.Ct. 469, and *Simas*, 937 F.2d at 463).

## IV

Bynum argues that under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), the facts necessary to determine a court's jurisdiction over a prosecution pursuant to § 666 must be determined by a jury. She contends that the district court erred by failing to submit to the jury the question of whether the facts of her case demonstrated a sufficient federal nexus. We review questions of law de novo. *Harper*, 278 F.3d at 973.

In *Apprendi*, the Supreme Court held that " '[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged.' " *Apprendi*, 530 U.S. at 477, 120 S.Ct. 2348 (quoting *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1969)). Bynum argues that a federal nexus is an element of the offense set forth in § 666, as it is in the Hobbs Act, 18 U.S.C. § 1951 (1994). But unlike § 666, the Hobbs Act includes an express requirement that a defendant's offense must affect interstate commerce.[3] Under the Hobbs Act, federal court jurisdiction is an express element of the offense. *See Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) (holding that "there are two essential elements of a Hobbs Act crime: interference with commerce, and extortion.... The charge that interstate commerce is affected is critical since the Federal Government's jurisdiction of this crime rests only on that interference."). In this matter, each of the elements of the offense set forth in § 666 was included in Bynum's indictment and presented to the jury.[4]

---

**3.** The Hobbs Act, 18 U.S.C. § 1951 (1994), reads in pertinent part:

(a) Whoever in any way or degree obstructs, delays or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion ... shall be fined under this title or imprisoned ... or both

(b) As used in this section—

....

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

**4.** Count two of the indictment reads in pertinent part:

(a) The City and County of Honolulu was a local government that received federal assistance in excess of $10,000 during the one-year period beginning July 1, 1998.

(b) Mirikitani was an agent of the City and County of Honolulu as a member of the ... Honolulu City Council.

(2) From on or about July 15, 1999, up until a date in September, 1999, in the district of Hawaii, defendant Mirikitani, and defendant Sharron Bynum as an aider and abettor, did intentionally ... convert ... property of the City and County of Honolulu of a value of $5,000 or more ... for his own benefit.

In *United States v. Klimavicius–Viloria*, 144 F.3d 1249 (9th Cir.1998), we held that if a statute does not expressly require proof of a nexus between the criminal conduct and the United States, proof of such a connection is not an element of the offense. *Id.* at 1257. In *Klimavicius–Viloria*, the defendant was prosecuted under the Maritime Drug Law Enforcement Act ("MDLEA") for possessing a controlled substance with intent to distribute it while on a vessel in international waters. *Id.* at 1254–56. We explained in *Klimavicius–Viloria* that under such circumstances a nexus requirement "is a judicial gloss applied to ensure that a defendant is not improperly haled before a [United States federal] court for trial." *Id.* at 1257. We held in *Klimavicius–Viloria* that proof of an implied nexus under MDLEA is "part of the jurisdictional inquiry," and as such it is a question of law which "should be decided by the court prior to trial." *Id.* Assuming arguendo that a federal nexus must be demonstrated in a prosecution pursuant to § 666 " 'sufficient to satisfy the United States' pursuit of its interests,' " the existence of that nexus is a question of law that must be decided by the court prior to trial. *Id.* (quoting *United States v. Caicedo*, 47 F.3d 370, 372 (9th Cir.1995)). The district court did not err in declining to submit the federal nexus question to the jury.

## V

Bynum also contends that the district court erred in determining that sufficient facts existed to subject her to a two-level upward adjustment of her sentence under U.S.S.G. § 2C1.1(b)(1) for participating in the unlawful payment of two or more individuals, when the jury conviction did not specify whether Bynum was guilty of payment to one or two parties. Bynum concedes her involvement in the kickback scheme with regard to Serikawa.

She maintains, however, that the record does not demonstrate that she was involved in the unlawful payments to McMillan. We review a district court's factual findings in the sentencing phase of a trial for clear error. *United States v. Williams*, 291 F.3d 1180, 1196 (9th Cir. 2002).

The Sentencing Guidelines require an enhancement whenever "the offense involved more than one bribe or extortion." U.S.S.G. § 2C1.1(b)(1). The Guidelines also authorize a two-level upward adjustment for "all reasonably foreseeable acts or omissions of others in furtherance of [a] jointly undertaken criminal activity," even if conspiracy is not a charged offense. U.S.S.G. § 1B1.3(a)(1)(B). The Government presented evidence that Bynum and Mirikitani were jointly involved in a kickback scheme and that Bynum had knowledge of the payments Mirikitani made to McMillan. The district court therefore did not err in concluding that it was foreseeable to Bynum that Mirikitani would solicit a bribe from McMillan in furtherance of the jointly undertaken scheme to embezzle public funds.

## VI

Bynum asserts that the district court erred in finding that the bonus kickback scheme was designed for the "purpose of influencing" a government official. The district court's interpretation of the Sentencing Guidelines is reviewed de novo. *United States v. Alexander*, 287 F.3d 811, 818 (9th Cir.2002). Section § 2C1.1(b)(2)(B) of the Guidelines instructs a trial court to apply an eight-level enhancement if "the offense involved a payment for the purpose of influencing an elected [or other high ranking] official." U.S.S.G. § 2C1.1(b)(2)(B). The record shows that Serikawa and McMillan agreed

to pay Honolulu Councilman Mirikitani money to influence him to give them bonuses out of public funds, and that Serikawa paid the funds to induce Mirikitani to promote Serikawa to a full-time position. The district court did not err in imposing an eight-level enhancement pursuant to U.S.S.G. § 2C1.1(b)(2)(B).

## CONCLUSION

We conclude that § 666 is facially constitutional. We also hold that the district court did not err in concluding that the existence of a federal nexus—if one is required under § 666—is a question of law for the court, rather than an element of the offense that must be submitted to the jury. We also determine that the district court did not err in its sentencing decisions.

AFFIRMED.