UNITED STATES of America,
Plaintiff–Appellee,

v.

Antonio R. CABRERA, Defendant–
Appellant.

No. 01–10152.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 2002.

Filed April 30, 2003.

507

Bruce Berline, Garapan, Saipan, MI, for the defendant-appellant.

John J. Rice, United States Attorney of the Northern Mariana Islands, Saipan, MI, for the plaintiff-appellee.

Before: SCHROEDER, Chief Judge, ALARCÓN and FISHER, Circuit Judges.

SCHROEDER, Chief Judge.

Antonio R. Cabrera once held a responsible position in the government of the Commonwealth of the Northern Mariana Islands (CNMI). He now appeals his conviction on three counts of violating 18 U.S.C. § 666 for theft from a program receiving federal funds. Section 666 of Title 18 is a broad statute designed to protect the financial integrity of programs receiving federal funding. For criminal liability to exist, the value of the stolen property must exceed $5,000.[1]

The only significant legal question before us is whether the government was required to prove that the theft had some effect on a program receiving federal funds. Whether this federal nexus is required is an open question in this circuit. We leave the question open, for we hold that, assuming there is such a requirement, it was more than satisfied here. Cabrera was the Secretary of Finance for the Commonwealth. It was his job to account for the receipt and disbursement of all Commonwealth funds from federal or Commonwealth sources. He stole from the funds within his control, which included substantial federal funds. Any requirement of a federal nexus was clearly met.

The appellant served as the Secretary of Finance for the CNMI from September 1995 until August 1997. Among other things, the Secretary of Finance, according to the undisputed record in this case, has the duty to: (a) establish and maintain the books of accounts for the CNMI, (b) collect and deposit all locally raised revenues from any source, (c) receive and deposit all funds from the federal government, (d) disburse funds pursuant to law, and (e) pay obligations owed by the CNMI. The Secretary is the highest position in the Department of Finance, reporting only to the Governor. Prior to his appointment as Secretary of Finance, Cabrera served as special assistant to the Director of Health and Human Services (HHS) for the CNMI.

The first count of conviction was for fraudulently requesting and receiving $5,840.73 of typhoon differential pay (TDP) available to eligible employees who work during stage 1 and 2 tropical storms and typhoons. In November of 1996, according to the count of conviction, Cabrera filed for TDP for every hour of every storm to hit the CNMI since September 1994, representing his entire tenure at HHS and the Department of Finance. He received a lump sum of $5,840.73. The entire claim, however, was fraudulent, for the time sheets showed that Cabrera actually worked during only one of the storms and that he had already received TDP for that work. The evidence showed that dur-

---

**1.** 18 U.S.C. § 666 provides in material part as follows:

Theft or bribery concerning programs receiving Federal funds

(a) Whoever, if the circumstance described in subsection (b) of this section exists—
(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than the rightful owner or intentionally misapplies, property that—
(i) is valued at $5,000 or more, and

(ii) is owned by, or is under the care, custody, or control of such organization, government, or agency;

. . . .

shall be fined under this title, imprisoned not more than 10 years, or both.
(b) The circumstance referred to in subsection (a) of this section is that the organization, government, or agency receives, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

ing one of the storms in 1996, Cabrera was not even in the CNMI.

The second count of conviction stems from a $20,000 advance that Cabrera received from the Governor's contingency account for an official trip to the Philippines. Upon his return from the trip, Cabrera submitted receipts and a request for reimbursement in the amount of $20,884.35, which he was paid without regard to the $20,000 advance he had already received. Thus Cabrera effectively stole the $20,000 advance.

In the third count of conviction, Cabrera was found guilty of procuring an improper payment of $30,621.25 from the CNMI to his uncle's business, Castro and Associates. Cabrera arranged the payment, in exchange for a kickback "loan" of $3,000, by making an unlawful change order to a land surveying contract between the CNMI and Castro and Associates.

■ Cabrera's legal contention is that to violate § 666, thefts must have directly affected federal government interests, and that his theft was not proved to have done so. The statute on its face has no such requirement. In a 1991 holding following the language of the statute, we ruled that only two elements are required to sustain a conviction under § 666: (i) the defendant must be an agent of a government agency receiving $10,000 or more in federal funding annually, and (ii) the transaction (there, a bribe) must exceed $5,000. *See United States v. Simas,* 937 F.2d 459, 463 (9th Cir.1991). These requirements parallel § 666 exactly. We explained that Congress wanted to protect federal funds by preserving the integrity of the entities that receive the federal funds rather than tracing the illegal transaction to particular federal funds. *See id.*

Two years later, in *United States v. Wyncoop,* 11 F.3d 119 (9th Cir.1993), we held that the defrauded program or agency must receive federal funding directly, and that entities receiving only indirect benefits of federal funding, like colleges enrolling students who receive federally guaranteed loans, are not within the purview of that section. *See id.* at 122–23. This is the only limitation this circuit has placed on the statute.

The Supreme Court has expressly declined to decide whether a further relationship, or nexus, to a federal interest is required, but it has suggested that one may be. In *Salinas v. United States,* 522 U.S. 52, 60, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997), the Court said that the government need not prove that federal funds were actually stolen, and thus rejected the need to show a direct connection to a federal interest. It left open the question of whether some other kind of connection must be shown:

> We need not consider whether the statute requires some other kind of connection between a bribe and the expenditure of federal funds, for in this case the bribe was related to the housing of a prisoner in facilities paid for in significant part by federal funds themselves. And that relationship is close enough to satisfy *whatever connection the statute might require.*

522 U.S. at 59, 118 S.Ct. 469 (reviewing a bribery conviction under 18 U.S.C. § 666(a)(1)(B)) (emphasis added). More recently, in *Fischer v. United States,* 529 U.S. 667, 681, 120 S.Ct. 1780, 146 L.Ed.2d 707 (2000), a Medicare fraud case prosecuted under § 666, the Court cautioned against "turn[ing] every act of fraud or bribery into a federal offense, upsetting the proper federal balance." *Id.* at 681, 120 S.Ct. 1780.

The circuits have since split on whether to require a federal nexus, with two circuits requiring one and two holding that

none is required. *See United States v. Santopietro,* 166 F.3d 88, 93 (2d Cir.1999), and *United States v. Zwick,* 199 F.3d 672, 687 (3d Cir.1999), requiring a nexus, and *United States v. Dakota,* 197 F.3d 821, 826 (6th Cir.1999), and *United States v. Grossi,* 143 F.3d 348, 350 (7th Cir.1998), rejecting the need for one. The law in the Fifth Circuit is unsettled, with the court noting that such a nexus "might" be required after *Salinas. United States v. Phillips,* 219 F.3d 404, 413 (5th Cir.2000); *see also United States v. Reyes,* 239 F.3d 722, 734–35 (5th Cir.2001) (stating that it was not following the "more exacting" degree of connectivity required in *Zwick* and *Santopietro* ).

The most thorough post-*Salinas* analysis of a nexus requirement is contained in the Third Circuit's decision in *Zwick,* requiring a federal nexus, albeit a "highly attenuated" one. *See* 199 F.3d at 687. The court reasoned that if no nexus were required, federal authority would intrude into areas already covered by state law, even where no federal interests were implicated. *See id.* at 686–87. To justify this intrusion, there must be proof that some federal interest is at stake. The court was also reluctant to broaden the scope of federal powers without express direction from Congress. *Id.* In contrast, the Seventh Circuit has held that because money is fungible, federal interests are implicated whenever the local government at issue receives federal funding. *See Grossi,* 143 F.3d at 350.

We need not resolve this issue here. Just as the Supreme Court in *Salinas* held that the facts there clearly satisfied "whatever connection the statute might require," the facts presented here satisfy any requirement of a federal nexus. Cabrera was the Secretary of Finance for the CNMI, responsible for the receipt and disbursement of all federal monies directed to

CNMI programs—some $30 to $50 million annually. He used this position to his personal gain, defrauding the CNMI government of over $50,000. The Supreme Court in *Salinas* found a federal interest in "the threat to the integrity and proper operation of the federal program." 522 U.S. at 60, 118 S.Ct. 469. Here, the corrupt conduct of the very person responsible for receiving and disbursing all federal monies satisfies any connection that may be required. To require a greater showing of federal interest on these facts would amount to a requirement of direct tracing, which both the Supreme Court and the Ninth Circuit have rejected. *See Salinas,* 522 U.S. at 60, 118 S.Ct. 469; *Simas,* 937 F.2d at 463.

■ Cabrera also raises a number of other arguments in his appeal that can be dealt with summarily. Cabrera claims that the government failed to prove that he did not in fact work during two of the storms for which he claimed TDP, and that when the pay he received for these two storms is subtracted from the total charged under count one, the amount stolen falls below the $5000 jurisdictional minimum of 18 U.S.C. § 666. On November 26, 1996, Cabrera submitted TDP requests for eight separate storms, some over two years old. On the same date, three of Cabrera's subordinates at the Department of Finance submitted requests for these same storms, with all except one mirroring Cabrera's TDP requests for every hour of every storm. At trial, witnesses testified that the submissions were "unusual," "suspicious," and "less reliable" than they would have been if the requests had been made in a timely manner. Even Cabrera concedes that "there were major problems and inconsistencies with [his] application." As noted above, the government also proved that six of the eight requests were plainly fraudulent. However, Cabrera's

time sheets from his tenure at HHS do not cover two of the storms, an evidentiary gap which Cabrera now seeks to exploit. Viewing the evidence in the light most favorable to the prosecution, a reasonable jury could have concluded that these two storms were part of the same fraudulent scheme. The evidence was therefore sufficient to support the conviction on count one.

■ Cabrera argues that the district court improperly added a two-point adjustment for his leadership role in the offense under U.S.S.G. § 3B1.1(c). That section provides for such an adjustment where the defendant was "an organizer, leader, manager, or supervisor." Cabrera was Secretary of Finance; he initiated the fraudulent TDP scheme; he signed checks others refused to sign; and he played a leading role in the scheme involving his uncle's business. The two-level upward adjustment was therefore appropriate.

■ Finally, Cabrera contends that the government's failure to allege a federal nexus in the indictment deprived the district court of subject matter jurisdiction over Cabrera's case. As explained above, this circuit has never read a nexus requirement into 18 U.S.C. § 666, and this case does not present an occasion on which to do so. In *United States v. Bynum,* 327 F.3d 986, 2003 WL 1983790 (9th Cir.2003), we have explained that an indictment under § 666 need not charge a federal nexus because such a nexus, if required, is only " 'a judicial gloss applied to ensure that a defendant is not improperly haled before a [United States federal] court for trial,' " not an element of the offense. *Id.* at 993, at *5 (quoting *United States v. Klimavicius–Viloria,* 144 F.3d 1249, 1257 (9th Cir. 1998)) (alterations in *Bynum* original). The indictment here informed Cabrera of all of the elements required for a conviction under § 666 and was therefore suffi-

cient. *See U.S. v. Ross,* 206 F.3d 896, 899 (9th Cir.2000).

AFFIRMED.